UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Daniel Cardone,
＿＿＿＿＿＿＿＿＿
 Claimant

 v.                                    Case No. 17-cv-663-SM
                                       Opinion No. 2018 DNH 210

Nancy A. Berryhill, Acting Commissioner,
＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
Social Security Administration,
＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
 Defendant


**O R D E R**


Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant, Daniel Cardone, moves to reverse or vacate the Acting Commissioner's decision denying his applications for Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income Benefits under Title XVI. See 42 U.S.C. §§ 423, 1381-1383c (collectively, the "Act"). The Acting Commissioner objects and moves for an order affirming her decision.


For the reasons discussed below, claimant's motion is granted, and the Acting Commissioner's motion is denied.

**Factual Background**

I. <u>Procedural History</u>.

In March of 2016, claimant filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging that he was disabled and had been unable to work since August 22, 2015. Claimant was 34 years old at the time of his alleged disability and had acquired sufficient quarters of coverage to remain insured through June 30, 2016. Claimant's applications were denied and he requested a hearing before an Administrative Law Judge ("ALJ").

On May 31, 2016, claimant, his attorney, and an impartial vocational expert appeared before an ALJ, who considered claimant's applications de novo. Five weeks later, the ALJ issued her written decision, concluding that claimant was not disabled, as that term is defined in the Act, at any time prior to the date of her decision. Claimant then requested review by the Appeals Council. That request was denied. Accordingly, the ALJ's denial of claimant's applications for benefits became the final decision of the Commissioner, subject to judicial review. Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.

Claimant then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 8). In response, the Acting Commissioner filed a "Motion for an Order Affirming the Decision of the Commissioner" (document no. 10). Those motions are pending.

II. Stipulated Facts.

Pursuant to this court's Local Rule 9.1, the parties have submitted a joint statement of stipulated facts which, because it is part of the court's record (document no. 11), need not be recounted in this opinion. Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I. "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3). See also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991). Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Importantly, it is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966). See also Richardson v. Perales, 402 U.S. 389, 401 (1971).

II. The Parties' Respective Burdens.

An individual seeking SSI and/or DIB benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). See also 42 U.S.C. § 1382c(a)(3). The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that his impairment prevents him from performing his

former type of work.  See Manso-Pizarro v. Secretary of Health & Human Services, 76 F.3d 15, 17 (1st Cir. 1996); Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985).  If the claimant demonstrates an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform, in light of his age, education, and prior work experience.  See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  See also 20 C.F.R. §§ 404.1512, 404.1560, 416.912, and 416.960.

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982).  Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work

>     exists in the immediate area in which he lives, or
>     whether a specific job vacancy exists for him, or
>     whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Acting Commissioner's motion to affirm her decision.

**Background - The ALJ's Findings**

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920.  See generally Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  Accordingly, she first determined that claimant had not been engaged in substantial gainful employment since his alleged onset of disability: August 22, 2015.  Admin. Rec. at 18.  Next, she concluded that claimant suffers from the following severe impairments: "anxiety disorder, attention deficit hyperactive disorder (ADHA), history of polysubstance abuse, bilateral carpal tunnel syndrome."  Id.  But, the ALJ determined that claimant's impairments, whether considered alone or in combination, did not meet or medically equal one of the

impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Admin. Rec. at 19.

Next, the ALJ concluded that claimant retained the residual functional capacity ("RFC") to perform the exertional demands of "medium" work, subject to the following limitations: "claimant can handle and finger on an [sic] frequent basis, cannot be exposed to hazards, can do uncomplicated tasks (typically learned in less than thirty days), can interact with supervisors and coworkers on routine matters, can only have incidental contact with the public (cannot deal with the public as part of his job duties) and can have no frequent task changes." Id. at 20. In light of those restrictions, the ALJ concluded that claimant was not capable of performing any past relevant work. Id. at 24. See also Id. at 61 (vocational expert's testimony about claimant's work history).

At the final step of the analysis, the ALJ considered whether there were any jobs in the national economy that claimant might perform. Relying upon the testimony of the vocational expert, the ALJ concluded that, notwithstanding claimant's exertional and non-exertional limitations, "claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Id. at

7

25. Consequently, the ALJ concluded that claimant was not "disabled," as that term is defined in the Act, through the date of her decision.

**Discussion**

Claimant challenges the ALJ's decision on three grounds, asserting that she erred by: (1) improperly evaluating the expert medical opinion evidence of record in determining claimant's RFC; (2) failing to include claimant's "marked limitation" in concentration when she posed her hypothetical question to the vocational expert; and (3) incorrectly evaluating claimant's testimony about his symptoms and limitations.

Because the court agrees that the ALJ failed to properly account for claimant's "marked limitation" in the areas of concentration, persistence, and pace when posing hypothetical questions to the vocational expert, and because she also failed to adequately account for that "marked limitation" in determining claimant's RFC, the court need only address that issue.

At step three of the sequential analysis, the ALJ considered whether claimant's mental impairments, alone or in

combination, meet or medically equal the impairments listed in sections 12.04 ("Depressive, bipolar, and related disorders") and 12.06 ("Anxiety and obsessive-compulsive disorders") of Appendix I of the regulations. The "paragraph B" criteria described in both of those sections require the ALJ to determine whether the claimant suffers from an:

> extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) Understand, remember, or apply information; (2) Interact with others; (3) Concentrate, persist, or maintain pace; (4) Adapt or manage oneself.

20 C.F.R. Pt. 404, Subpt. P., App. 1, §§ 12.04(B) and 12.06(B). As to that third category of mental functioning, the ALJ concluded that claimant suffers from "marked limitations" in his "ability to concentrate, persist, or maintain pace." Admin. Rec. at 19. A "marked limitation" means that claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(F)(2)(d).

Taken together, then, a "marked limitation" in the areas of "concentration, persistence, and pace" means that claimant is "seriously limited" in his capacity to function independently, appropriately, and effectively on a sustained basis in the some or all of the following illustrative areas: initiating and

9

performing a task that he understands and knows how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and/or working a full day without needing more than the allotted number or length of rest periods during the day. 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(E)(3).

Claimant asserts that the ALJ erred when she neglected to include that significant limitation in the hypothetical question she posed to the vocational expert (or in her determination of claimant's RFC). The Acting Commissioner disagrees, asserting that the ALJ's hypothetical question to the vocational expert adequately addressed claimant's "marked limitation" in the areas of concentration, persistence, and pace. Specifically, the Acting Commissioner notes that the ALJ limited the person in her hypothetical as follows:

> The individual . . . could perform uncomplicated tasks, which I am defining as tasks that typically can be learned in 30 days or less. The individual could collaborate with supervisors and . . . . the individual would need an environment without frequent task changes.

\* \* \*

> I want you to assume that contact with the general
> public would be limited to incidental contact; which
> I'm defining as dealing with the public would not be
> part of job duties.

Admin. Rec. at 62-64. According to the Acting Commissioner, those limitations - each of which was incorporated into the ALJ's assessment of claimant's residual functional capacity - more than adequately addressed claimant's "marked limitation" in his ability to concentrate, persist, or maintain pace.

> Each of these limitations accommodate his difficulty
> in this area. The RFC's limitation for uncomplicated
> tasks allows for reduced concentration when learning
> and staying on task. The limitation for no frequent
> task changes accounts for an inability to maintain on
> task. Finally, the interaction limitations with his
> supervisors/coworkers and the public accounts for an
> inability to stay on task without distraction.

Acting Commissioner's Memorandum (document no. 10-1) at 9. The court is constrained to disagree.

As the Acting Commissioner notes, there is certainly case law supporting the proposition that, under certain circumstances, an RFC (or hypothetical question to a vocational expert) that limits a claimant to simple, unskilled work, may adequately take into account a claimant's <u>moderate</u> limitations in concentration, persistence, and pace (particularly when there is evidence suggesting that claimant can engage in simple,

11

routine tasks or unskilled work despite his or her mental limitations). But, that precedent is of marginal value here, because the claimant's limitations in that area are more severe: they are "marked." Or, as the pertinent regulations explain, claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(F)(2)(d).

Not long ago, the Court of Appeals for the Eleventh Circuit addressed, in some detail, the very issue presented by claimant in this appeal: the extent to which (and circumstances under which) an ALJ must account for limitations in concentration, persistence, and pace is his or her hypothetical question to a vocational expert.

> The Commissioner contends that to include such limitations in a hypothetical question would inappropriately conflate independent inquiries — the PRT [psychiatric review technique], at steps two and three, and the RFC, at step four. Other circuits have rejected this argument, see Ramirez v. Barnhart, 372 F.3d 546, 554 (3d Cir. 2004); Kasarsky v. Barnhart, 335 F.3d 539, 544 (7th Cir. 2002) (per curiam); Newton v. Chater, 92 F.3d 688, 695 (8th Cir. 1996), and so do we. Though the PRT and RFC evaluations are undeniably distinct, see 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3), nothing precludes the ALJ from considering the results of the former in his determination of the latter. See Ramirez, 372 F.3d at 555 ("While [Social Security Ruling] 96-8p does state that the [PRT] findings are 'not an RFC assessment'

and that step four requires a 'more detailed assessment,' it does not follow that the findings on the [PRT] play no role in steps four and five, and [Social Security Ruling] 96-8p contains no such prohibition.").

Other circuits have also rejected the argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work. See Stewart v. Astrue, 561 F.3d 679, 684–85 (7th Cir. 2009) (per curiam); Ramirez, 372 F.3d at 554; Newton, 92 F.3d at 695. But when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. See Simila v. Astrue, 573 F.3d 503, 521-22 (7th Cir. 2009); Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-76 (9th Cir. 2008); Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001). Additionally, other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations. See White v. Comm'r of Soc. Sec., 572 F.3d 272, 288 (6th Cir. 2009) (concluding that the ALJ's reference to a moderate limitation in maintaining "attention and concentration" sufficiently represented the claimant's limitations in concentration, persistence, and pace); Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002) (concluding that the hypothetical question adequately incorporated the claimant's limitations in concentration, persistence, and pace when the ALJ instructed the vocational expert to credit fully medical testimony related to those limitations).

In this case, the ALJ determined at step two that Winschel's mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace. But the ALJ did not indicate that medical evidence suggested Winschel's ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical. Consequently, the ALJ should have

13

> explicitly included the limitation in his hypothetical question to the vocational expert.

<u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1180-81 (11th Cir. 2011) (emphasis supplied).

So it is in this case. Given the unique situation presented by this claimant's impairments, the court is constrained to conclude that neither the ALJ's hypothetical question to the vocational expert, nor her assessment of claimant's RFC, adequately addressed his marked limitations in concentration, persistence, and pace. The relevant portion of the RFC, as determined by the ALJ, provides that claimant "can do uncomplicated tasks (typically learned in less than thirty days), can interact with supervisors and coworkers on routine matters, can only have incidental contact with the public (cannot deal with the public as part of his job duties) and can have no frequent task changes." Admin. Rec. at 20. That RFC fails to address claimant's "seriously limited" ability to, for example, work at an appropriate pace, complete tasks in a timely manner, change activities or work settings without being disruptive, work a full day without needing more than the typically-allotted number or length of break periods, or sustain

14

routine and regular attendance at work.  See 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(E)(3).[1]

The hypothetical question posed to the vocational expert is similarly deficient.  Merely limiting the individual in that hypothetical to uncomplicated tasks, in an environment that was generally removed from the public and involved infrequent task changes, did not fully account for all of claimant's (potential) limitations.  To the extent that the ALJ believed that claimant did not have deficiencies in certain abilities or skills that are generally encompassed within the context of "concentration, persistence, and pace," (e.g., staying on task or working at an appropriate and consistent pace) she neglected to make such a finding in her written opinion (or discuss it on the record with the vocational expert).  See generally, Cohen v. Astrue, 851 F. Supp. 2d 277, 286 (D. Mass. 2012) ("This Court holds that the hypothetical upon which the vocational expert based her opinion did not reflect the hearing officer's residual functional

---

[1] The ALJ did note, and reject as "speculative" and "not supported by the medical evidence", the opinions offered by claimant's two treating sources that he would likely be absent from work four or more days each month due to his mental impairments or the need to obtain treatment for them.  See Admin. Rec. at 23.  See also Id. at 969 and 976 (treating source opinions).  She did not, however, address claimant's ability to perform the remaining work-related abilities discussed in § 12.00(E)(3).

15

capacity in the absence of some limitation of concentration, persistence or pace."). See also Dimambro v. US Soc. Sec. Admin., Acting Comm'r, No. 16-CV-486-PB, 2018 WL 301090, at *10 n.12 (D.N.H. Jan. 5, 2018) ("[C]ourts have largely agreed that where an ALJ has identified moderate limitations in concentration, persistence, or pace, his RFC finding or hypothetical at step five must either adopt restrictions that address 'staying on task' or explain why such restrictions are unwarranted.").

And, while it is probably self-evident, it bears noting that "for a vocational expert's testimony to constitute substantial evidence, the vocational expert's opinion must be in response to a hypothetical that accurately describes the claimant's impairments." Cohen v. Astrue, 851 F. Supp. 2d 277, 284 (D. Mass. 2012) (collecting cases). See also Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982) ("[I]n order for a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities.").

## Conclusion

The ALJ supportably concluded that claimant's mental impairments cause him to suffer from "marked" limitations in the areas of concentration, persistence, and pace. Standing alone, such a finding does not mean that claimant is disabled under the Act. But, having made that finding, the ALJ was required to account for it in some way in the hypothetical question(s) she posed to the vocational expert and in her determination of claimant's residual functional capacity.

The regulations give several examples of precisely what types of deficiencies might lead to the conclusion that a claimant suffers from a marked limitation in the areas of concentration, persistence, and pace (e.g., a seriously limited ability to "initiat[e] and perform[] a task that you understand and know how to do" or to "complet[e] tasks in a timely manner" or to "sustain[] an ordinary routine and regular attendance"). What is missing from the ALJ's written decision is some discussion of which particular deficiencies afflict this particular claimant and how they affect his ability to function in a particular work setting. Absent such a discussion, the court cannot conclude that the ALJ's RFC (or the testimony given by the vocational expert) is supported by substantial evidence.

For the foregoing reasons, claimant's motion to reverse the decision of the Commissioner (document no. 8) is granted to the extent he seeks a remand for further proceedings. The Acting Commissioner's motion to affirm her decision (document no. 10) is denied.

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the ALJ dated July 6, 2017, is vacated and this matter is hereby remanded for further proceedings consistent with this order. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

October 29, 2018

cc: D. Lance Tillinghast, Esq.
  Terry L. Ollila, AUSA